UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROY BROWN,

    *Plaintiff,*

CASE NO. 07-CV-11312

v.

DISTRICT JUDGE PATRICK J. DUGGAN
MAGISTRATE JUDGE CHARLES E. BINDER

LINDA MATAUSZAK,
COLLEEN KOENIG, and
JAN TROMBLEY,

    *Defendants.*
_____/

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION
ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT,
PLAINTIFF'S MOTIONS TO AMEND TO ADD CONNIE WILLIAMS
& PLAINTIFF'S MOTION FOR ENLARGEMENT OF TIME**
(Docs. 94, 95, 96)

## I. RECOMMENDATION

For the reasons set forth below, **IT IS RECOMMENDED** that Defendants' motion for summary judgment (Doc. 94) be **GRANTED**, that Plaintiff's motion to amend (Doc. 95) be **DENIED**, and that Plaintiff's motion for enlargement of time (Doc. 96) be **DENIED AS MOOT**.

## II. REPORT

### A. Introduction & Procedural History

Plaintiff Roy Brown is a state prisoner who was convicted of first degree murder in 1991 and who is currently incarcerated at the Chippewa Correctional Facility in Kincheloe, Michigan. On March 27, 2007, Plaintiff filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983, alleging that his constitutional rights were violated when he failed to receive an item of legal mail from the Michigan Court of Appeals, which was mailed to him at the Saginaw Regional

Correctional Facility on the day that he was transferred to another facility. As defendants, he named the mail room supervisor at the Saginaw facility, the warden of that facility, and a mail room employee. On May 16, 2008, an order adopting a previous Report and Recommendation ("R&R") recommending *sua sponte* dismissal was entered. (Doc. 25.) The case was dismissed and an appeal of that order was filed by Plaintiff. On January 21, 2009, the U.S. Court of Appeals for the Sixth Circuit vacated the judgment in part and remanded the case for further proceedings. The Sixth Circuit held that this court's reading of *Lewis v. Casey*, 518 U.S. 343, 349, 116 S. Ct. 2174, 135 L. Ed. 2d 606 (1996), was too narrow and that actual injury in the access-to-courts context is not limited to direct appeals, habeas corpus applications, and civil rights claims, but also includes motions for relief from judgment brought under Michigan Court Rule 6.500. (Doc. 31 at 3-4.)

After the remand, Defendants filed a motion to dismiss (Doc. 41), Plaintiff responded (Doc. 42), and the undersigned magistrate judge issued a second R&R recommending that the motion be granted and the case dismissed (Doc. 43), which was adopted on September 1, 2009. (Doc. 44.)

Plaintiff appealed and on January 31, 2011, the Sixth Circuit entered an opinion noting that:

> While Brown presented sufficient facts to allege interference with his legal mail, it is true that neither Brown's complaint nor his response to the motion to dismiss alleges sufficient facts to establish the validity of the *underlying* claims, as required by precedent. However, Brown has filed with this court the memorandum of law he filed in state court in connection with the underlying claim, which makes clear that he *has* sufficient facts to demonstrate that the underlying claims were non-frivolous – he simply failed to include that in his § 1983 pleadings. Therefore, considering the equities of the case . . . we **REMAND** the case to allow Brown to amend his pleadings, in order to include this necessary information.

(Doc. 61 at 1-2.) Pursuant to court order entered on February 24, 2011, Plaintiff timely filed an amended complaint on March 17, 2011. (Doc. 65.)

On March 29, 2011, Defendants filed a motion to dismiss. (Doc. 66.) A third R&R was filed, recommending that the court deny the motion to dismiss. (Doc.73.) On October 24, 2011,

2

the district court adopted the R&R and denied the motion to dismiss. (Doc. 77.) Discovery proceeded and on August 31, 2012, Defendants filed the instant motion for summary judgment. (Doc. 94.) Plaintiff responded on October 5, 2012. (Doc. 98.) In addition, Plaintiff filed a motion to amend the complaint to add Connie Williams (Doc. 95) and a motion for enlargement of time in which to file dispositive motions. (Doc. 96.) Defendants responded to the motion to amend on October 4, 2012. (Doc. 97.)

Upon review of the documents, I conclude that, pursuant to E.D. Mich. LR 7.1(e)(2), these motions are ready for Report and Recommendation without oral argument.

### B. Plaintiff's Motion to Amend (Doc. 95)

Plaintiff moves to amend his complaint to add Connie Williams as a Defendant because she "signed the legal mail log sheet." (Doc. 95 at 1.) Plaintiff states that "this *pro se* plaintiff ha[s] been assigned throughout these pleading by several M.D.O.C. inmates legalwriters whom failed to add 'Connie Williams' to my plaintiff complaint" and that "Connie Williams is clearly the one liable for The Constitutional Violations asserted here in." (Doc. 95 at 1.)

When a party wishes to amend a pleading after the opposing party's responsive pleading has been served, it may only do so by leave of court or by written consent of the adverse party. Fed. R. Civ. P. 15(a). When a motion for leave to amend is before the court, Rule 15(a) provides that "leave shall be freely given when justice so requires." *Id.* "Although Rule 15(a) indicates that leave to amend shall be freely granted, a party must act with due diligence if it intends to take advantage of the Rule's liberality," *United States v. Midwest Suspension & Brake*, 49 F.3d 1197, 1202 (6th Cir. 1995), because, despite the Rule's liberality, leave to amend "is by no means automatic." *Little v. Liquid Air Corp.*, 952 F.2d 841, 845-46 (5th Cir. 1992). The decision to grant

3

or deny a motion to amend is left to the sound discretion of the district court. *Robinson v. Michigan Consol. Gas Co., Inc.*, 918 F.2d 579, 591 (6th Cir. 1990).

> When determining whether to grant leave to amend, the court is to consider several factors:
>
> Undue delay in filing, lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment are all factors which may affect the decision. Delay by itself is not sufficient reason to deny a motion to amend. Notice and substantial prejudice to the opposing party are critical factors in determining whether an amendment should be granted.

*Head v. Jellico Hous. Auth.*, 870 F.2d 1117, 1123 (6th Cir. 1989) (quoting *Hageman v. Signal L.P. Gas, Inc.*, 486 F.2d 479, 484 (6th Cir. 1973)).

In the instant case, there certainly has been delay in the filing of the request to amend since this case has a long procedural history, including having been remanded from the Sixth Circuit. The question is whether that delay has been "undue." I suggest that it has. Plaintiff did not recently discover the mailroom log sheet dated October 17, 2005, bearing Connie Williams' initials. Had this discovery been recent, e.g., as attached to Defendants' motion for summary judgment (Doc. 94 at Ex. B), the delay may have been understandable. However, Plaintiff had notice of the log sheet and the information contained in it since March 17, 2011, when he attached the very same log sheet to his amended complaint. (Doc. 65 at 27.) Therefore, I suggest that the delay has been undue and that the long procedural history of this case shows that Defendants would be substantially prejudiced by the proposed amendment. I further suggest that for the reasons stated in the consideration of Defendants' motion for summary judgment, amendment would be futile. I therefore recommend that Plaintiff's motion to amend be denied.

    **C.    Plaintiff's Motion for Enlargement of Time (Doc. 96)**

Plaintiff's motion for enlargement of time in which to file dispositive motions (Doc. 96) is not a request for further time to file his own dispositive motions but rather a request for "a minimum of a 30 day extension to file his response to Defendant's Motion for Summary Judgment." (Doc. 96 at 3.) Since Plaintiff filed his response to Defendant's motion for summary judgment on October 5, 2012, the motion is moot.

### D. Defendants' Motion for Summary Judgment (Doc. 94)

#### 1. Motion Standards

A motion for summary judgment will be granted under Rule 56(c) where "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). All facts and inferences must be viewed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). The moving party has the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-movant's case. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989) (citing *Celotex Corp. v Catrett*, 477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)). In determining whether the moving party has met its considerable burden, a court may consider the plausibility of the moving party's evidence. *Matsushita*, 475 U.S. at 587-88. Summary judgment is also proper where the moving party shows that the non-moving party is unable to meet its burden of proof. *Celotex*, 477 U.S. at 326.

In response, the non-moving party cannot rest merely on the pleadings alone. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). Instead, the non-moving party has an obligation to present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos.*, 8 F.3d

335, 339-40 (6th Cir. 1993). When the nonmoving party fails to adequately respond to a summary judgment motion, a district court is not required to search the record to determine whether genuine issues of material fact exist. *Street*, 886 F.2d at 1479-80. Instead, the court will rely upon the "facts presented and designated by the moving party." *Guarino v. Brookfield Twp. Trustees*, 980 F.2d 399, 404 (6th Cir. 1992). The Sixth Circuit explicitly instructed that it is "utterly inappropriate for the court to abandon its position of neutrality in favor of a role equivalent to champion for the non-moving party: seeking out facts, developing legal theories, and finding ways to defeat the motion." *Id.* at 406.

After examining the evidence designated by the parties, the court then determines "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Booker v. Brown & Williamson Tobacco Co.,* 879 F.2d 1304, 1310 (6th Cir. 1989) (quoting *Anderson*, 477 U.S. at 251-52). Summary judgment will not be granted "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

**2.     Exhaustion**

Defendants argue that Plaintiff failed to properly exhaust his claim under the relevant policy directive because his Step I grievance named only the "mailroom at Saginaw Correctional Facility" and not the individual defendants. (Doc. 94 at 9.)  Defendants further note that during his deposition, Plaintiff testified that he chose to sue these Defendants because they had responded to his grievances. (Doc. 94 at 8.) Defendants further argue that Plaintiff's second grievance (SRF-2007-01-01639-28A) was rejected as redundant and duplicative of the issues raised in his first grievance  (SRF-2006-03-00292-15F) pursuant to PD 03.02.130 ¶ G(1). (Doc. 94 at 9.) Plaintiff responds that he did exhaust his administrative remedies because he named "personnel" at the

Saginaw Correctional Facility mailroom and the fact that he did not use John or Jane Doe does not bar relief. (Doc. 98 at 9.) Plaintiff also responds that he cannot be held "responsible to have knowledge of, or possess evidence of a conspiracy, when an act of conspiracy is an event which by definition is a secret, holds little, if no evidence, other than events which produce unanswered and suspicious facts." (Doc. 98 at 10.)

Prisoner civil rights cases are subject to the Prison Litigation Reform Act's ("PLRA") mandate that "[n]o action shall be brought with respect to prison conditions under § 1983 . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Suits "brought with respect to prison conditions" include "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532, 122 S. Ct. 983, 152 L. Ed. 2d 12 (2002). To exhaust a claim, a prisoner must proceed through all of the steps of a jail or prison's grievance process, because an inmate "cannot abandon the process before completion and claim that he has exhausted his remedies." *Hartsfield v. Vidor*, 199 F.3d 305, 309 (6th Cir. 1999). The Supreme Court held in *Woodford v. Ngo*, 548 U.S. 81, 126 S. Ct. 2378, 165 L. Ed. 2d 368 (2006), that failure to "properly" exhaust bars suit in federal court. "Proper exhaustion" means that the plaintiff complied with the administrative "agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id*. at 2386.

The Supreme Court provided further clarification of the PLRA's exhaustion rule in *Jones v. Bock*, 549 U.S. 199, 127 S. Ct. 910, 166 L. Ed. 2d 798 (2007). The *Jones* Court struck down the Sixth Circuit's procedural rule placing the burden on prisoners to plead and prove exhaustion in

7

their complaint, holding instead that failure to exhaust is an affirmative defense that must be raised by the defendant. *Id.* at 921. The Court further held that "[t]he level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones,* 127 S. Ct. at 922-23.

The Michigan Department of Corrections provides prisoners with a grievance procedure for bringing forward their concerns and complaints. *See* MDOC Policy Directive ("PD") 03.02.130 (eff. Dec. 19, 2003).[1] The MDOC's grievance procedure consists of steps that a prisoner must follow prior to filing a complaint in court, and each step is accompanied by a time limit. First, within two business days after becoming aware of a grievable issue, an inmate should attempt to verbally resolve the dispute with those involved. MDOC PD 03.02.130(R). If such an attempt is impossible or unsuccessful, the inmate must then submit a Step I grievance form within five days. MDOC PD 03.02.130(X). The grievance policy provides the following instructions regarding what information needs to be included in a grievance:

> The issues shall be stated briefly.  Information provided shall be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how).  Dates, times, places and names of all those involved in the issue being grieved are to be included.

MDOC PD 03.02.130(T).

The prison staff is required to respond in writing to a Step I grievance within fifteen days, unless an extension is granted. MDOC PD 03.02.130(Y). If the inmate is not satisfied with the response, or does not receive a response within fifteen days, he then must request a Step II appeal form within five days, and has an additional five days to submit it. MDOC PD 03.02.130(DD).

---

[1] The policy directive was superceded on March 5, 2007, but since the conduct at issue here occurred before that date, the 2003 version applies.

Once again, if the inmate is dissatisfied with the response at Step II or does not receive a Step II response within fifteen days, he has ten business days to submit a Step III appeal to the Prisoner Affairs Section. MDOC PD 03.02.130(HH). The Step III response concludes the administrative grievance process.

Plaintiff's Step I grievance (SRF-06-03-0092-15f) states that "this grievance is on the mail room at Saginaw Correctional Facility." (Doc. 94, Ex. D at 8.) Plaintiff contends that he properly exhausted his administrative remedies because, although he did not name any individual defendants in this case, he named "personnel" at the Saginaw Correctional Facility mailroom and the fact that he did not use John or Jane Doe should not bar relief. (Doc. 98 at 9.) I suggest, however, that Plaintiff's reference to "personnel" or, more accurately, his statement that his grievance was "on the mailroom," is insufficient. *See Grear v. Gelabert*, 2008 WL 474098, at *7-8 (W.D. Mich. 2008); *Hall v. Warren*, 443 F. App'x 99, 106 (6th Cir. 2011) (failure to name defendants in Step I grievance was inadequate despite the plaintiff's allegation that he needed an interview to learn the defendants's names); *Vandiver v. CMS, Inc.*, 326 F. App'x 885, 890 (6th Cir. 2009) (granting summary judgment for failure to exhaust where the plaintiff failed to name a defendant in grievance even though the plaintiff claimed that defendants concealed the defendant's identity); *Sullivan v. Kasajaru*, 316 F. App'x 469, 470 (6th Cir. 2009) (claims not properly exhausted where the plaintiff failed to name defendants in first grievance).[2] I therefore suggest that summary judgment could be granted on this ground alone.

---

[2] I note that Plaintiff also filed what purports to be an appeal. Plaintiff's Step I grievance (SRF-2007-01-01639-28A) stated that prison policy "allows me to appeal the rejection of the step-One response which attempts to avoid the issue based on a prior grievance no. 0603-0292-15F which this grievance alleges new facts central to the claims . . . The United States Supreme Court has ruled that prison officials failure to properly respond to the Grievant's claims to thwart the grievance process is arbitrary state . . . action in violation of my due process right . . . ." (Doc. 94 at Ex. G.) To the extent that this grievance could be considered a separate grievance, it also fails to name any of the instant defendants and, thus, does not assist Plaintiff.

9

### 3. Merits

Finally, I suggest that even if the merits of Plaintiff's access-to-courts claim are addressed, the result would be the same. It is well-established that prisoners have a constitutional right of "adequate, effective, and meaningful" access to the courts. *Bounds v. Smith*, 430 U.S. 817, 822, 97 S. Ct. 1491, 52 L. Ed. 2d 72 (1977); *Procunier v. Martinez*, 416 U.S. 396, 419, 94 S. Ct. 1800, 40 L. Ed. 2d 224 (1974). "Prison regulations or practices that affect a prisoner's legal mail are of particular concern because of the potential for interference with a prisoner's right of access to the courts." *Rowe v. Shake*, 196 F.3d 778, 782 (7th Cir. 1999) (citing *Lewis v. Casey*, 518 U.S. 343, 116 S. Ct. 2174, 135 L. Ed. 2d 606 (1996)). In *Lewis v. Casey*, the Supreme Court held that in order to bring a § 1983 action based upon a violation of the prisoner's right of access to the courts, the prisoner must show that he was prejudiced by demonstrating a specific actual injury. *Lewis*, 518 U.S. at 351. The Sixth Circuit, soon after *Lewis* was decided, explained that

> [i]n order to state a claim for denial of meaningful access to the courts, however, plaintiffs must plead and prove prejudice stemming from the asserted violation. Plaintiffs must demonstrate, for example, that the inadequacy of the prison law library or the available legal assistance caused such actual injury as the late filing of a court document or the dismissal of an otherwise meritorious claim.

*Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996). Furthermore, the actual injury must have occurred in one of three types of cases, because "a prisoner's right to access the courts extends to direct appeals, habeas corpus applications, and civil rights claims only." *Thaddeus-X v. Blatter*, 175 F.3d 378, 391 (6th Cir. 1999) (en banc). Despite the Sixth Circuit's en banc determination that *Lewis* applies "only" to "direct appeals, habeas corpus applications, and civil rights claims[,]" the Sixth Circuit in this case held that this Court's reading of *Lewis* was too narrow and that actual injury in the access-to-courts context can include motions for relief from judgment brought under

10

Michigan Court Rule 6.500 as well as direct appeals, habeas corpus applications, and civil rights claims. (Doc. 31 at 3-4.)

First, I suggest that Plaintiff has not supported any allegation that would show an affirmative link between the conduct of the named defendants and the loss of his mail. To state a civil rights claim, a plaintiff must allege that he suffered a specific injury as a result of the conduct of a particular defendant and he must allege an affirmative link between the injury and the conduct of that defendant. *Rizzo v. Goode*, 423 U.S. 362, 371-72, 377, 96 S. Ct. 598, 46 L. Ed. 2d 561 (1976). *See also Ashcroft v. Iqbal*, 556 U.S. 662, 676, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (a plaintiff "must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution"); *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998) ("[a] plaintiff must allege facts, not simply conclusions, that show that an individual was personally involved in the deprivation of his civil rights"). To state a claim against a supervisory official, a plaintiff must allege that the supervisory official personally participated in the constitutional deprivation or that the supervisory official was aware of widespread abuses and, with deliberate indifference to the inmate's constitutional rights, failed to take action to prevent further misconduct. *Monell v. New York City Dep't of Soc. Services*, 436 U.S. 658, 691-92, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978). In this case, Plaintiff has alleged no connection nor brought forth evidence connecting the named defendants with the loss of his mail beyond the defendants' mere supervisory roles. I therefore suggest that summary judgment in favor of defendants could be granted for this reason alone.

I further suggest that Plaintiff's claim fails for the additional reason that the only evidence Plaintiff offers is the result: that his legal mail was lost somewhere between the mail room and his hands. Defendants have proffered affidavits indicating that they did not intentionally destroy or

lose Plaintiff's mail. (Doc. 94 at Exs. E, F.) "Mere negligence is not actionable under § 1983." *Wojnicz v. Davis*, 80 F. App'x 382, 384 (6th Cir. 2003). Therefore, the courts "have never held or suggested that an isolated, inadvertent instance" of interference with a prisoner's legal mail would support a § 1983 action. *Gardner v. Howard*, 109 F.3d 427, 431 (8th Cir. 1997); *Johnson v. Wilkinson*, No. 98-3866, 2000 WL 1175519, at *2 (6th Cir. 2000) ("This random and isolated interference with [the plaintiff's] mail did not violate his constitutional rights.").

Plaintiff's own deposition testimony reveals that he has no evidence of intent, malice, or caprice necessary to withstand Defendants' properly supported motion for summary judgment. (Doc. 94, Ex. C at 6.) I therefore suggest that Defendants' motion for summary judgment should be granted. *See also Hunter v. Wellborn*, 52 F. App'x 277, 279-80 (7th Cir. 2002) (affirming dismissal where mail room supervisor was merely negligent in failing to forward one parcel of legal mail); *Sims v. Landrum*, 170 F. App'x 954, 957 (6th Cir. 2006) (where there was no evidence that mail room staff acted intentionally in declining to expedite processing of inmate's legal papers that were due in the very near future, allegations showed only "regrettable, but non-cognizable, negligence"); *Carlton v. Jondreau*, 76 F. App'x 642, 643 (6th Cir. 2003) (prison officials did not violate inmate's constitutional rights by negligently losing one piece of legal mail).

I further suggest that this finding is not undermined by Plaintiff's argument that he cannot be held "responsible to have knowledge of, or possess evidence of a conspiracy, when an act of conspiracy is an event which by definition is a secret, holds little, if no evidence, other than events which produce unanswered and suspicious facts." (Doc. 98 at 10.) Courts recognize that "conspiracies are by their very nature secretive operations" such that they may need to be proven by circumstantial rather than direct evidence. *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999). However, this does not relieve plaintiffs of their burden to present more than mere

conclusory allegations. *See Gutierrez v. Lynch*, 826 F.2d 1534, 1539 (6th Cir. 1987) (vague and conclusory allegations of conspiracy unsupported by material facts are insufficient under § 1983).

Plaintiff's claim also fails, I suggest, for the reason that the only conduct he attributes to these defendants, as he stated in his deposition testimony, is their failure to adequately respond to his grievances. (Doc. 94 at 9-10, Ex. C at 6.) The Sixth Circuit has held that claims against a corrections official for their response (or lack of response) to a grievance are not cognizable in a prisoner civil rights suit:

> The mere denial of a prisoner's grievance states no claim of constitutional dimension. *See Martin v. Harvey*, No. 00-1439, 2001 WL 669983, at *2, 14 Fed. Appx. 307 (6th Cir. June 7, 2001) ("The denial of the grievance is not the same as the denial of a request to receive medical care."); *see also Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) ([as against defendants whose only involvement was the denial of administrative remedies], [t]here is no allegation that any of these defendants directly participated . . . in the claimed . . . acts . . . .").

*Alder v. Correctional Med. Srvcs.*, 73 F. App'x 839, 841 (6th Cir. 2003). I therefore recommend that Defendants' motion for summary judgment be granted on this ground as well.

### 4. Conclusion

For the reasons stated above, it is recommended that Defendants' motion for summary judgment (Doc. 94) be granted, that Plaintiff's motion to amend (Doc. 95) be denied, and that Plaintiff's motion for enlargement of time (Doc. 96) be denied as moot.

## III. REVIEW

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2). *See*

*also* 28 U.S.C. § 636(b)(1). The response shall be concise, but commensurate in detail with the objections, and shall address specifically, and in the same order raised, each issue contained within the objections.

Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 837 (6th Cir. 2006); *Frontier Ins. Co.,* 454 F.3d at 596-97.

           s/ Charles E Binder
           CHARLES E. BINDER
Dated: October 31, 2012           United States Magistrate Judge

**CERTIFICATION**

I hereby certify that this Report and Recommendation was electronically filed this date and electronically served on counsel of record via the Court's ECF System and served via U.S. Postal Service on the following non-ECF participant: Roy Brown #217108, Chippewa Correctional Facility, 4269 West M-80, Kincheloe, MI 49784.

Date: October 31, 2012        By    s/Patricia T. Morris
                                      Law Clerk to Magistrate Judge Binder